Thank you, Your Honor. May it please the Court, I am Saul Huerta and I represent Mr. Canedo-Reyna. Could you speak up a little more, darling? Thank you. In Mr. Canedo-Reyna's case, there are basically two issues, and the first one is whether his removal order or his deportation order, because it happened back in 1985, was lawfully issued. Under 1326d, the district court found that there was only one problem with it, and that is that he had not exhausted administrative remedies. He was deported when he wasn't present and he hadn't given notice of the hearing. Based on current regulations, that would mean that he could move to reopen, even from Mexico or some other country. I think the problem with that is we — Has he tried to reopen? He has not, Your Honor. Could I ask another question? If he hasn't tried, he's just assuming he can't. Is that correct? Well, Your Honor, frankly, I don't know if he can. I guess my point is — The question is, if I hear the government, right, the government seems to be suggesting, sure, he can. It's perfectly available. So they concede that, but he still isn't going to give it a shot, right? He just wants us to say he can't. Is that right? Well, no, Your Honor. I think when you look at — when you look at 1326d and it talks about the person has to exhaust the administrative remedies, it refers to administrative remedies that were available at the time, meaning at the time of his hearings, at the time of his removal. And in 1992 — Well, that's what you say. Right. The government says, no, no, no. As far as we're concerned, he can just go ahead and move to reopen. So what's stopping him? Well, Your Honor, well, right now he's — I am not in contact with him right now because he has been ordered removed again. So it's my understanding he's in Mexico. So I guess the only answer I have to that is that as we're talking about the criminal case, it's the regulations, the administrative regulations in existence at the time of his removal or his deportation order. Because otherwise, someone who doesn't know anything about the law can go ahead and kind of, you know, be sent out. Then the administrative regulations change, and now in theory he could reopen. Well, let me just ask you something that's bothering me here as we keep talking about 1985. Yes. I'm not really sure what relevance that has when the 19 — the 2006 order is the basis for the criminal case, correct? Your Honor, actually both — If you look at the indictment. I mean, if you look at the papers, it's the 2006 order. I mean, yeah, it's the 2006 order that's the criminal case. And, Your Honor, I think the reason the district court went back to the 1985 order is because if you look at both the 2006 and the 2003 removals, they were both expedited removals for act felons. So they all, in theory, date back or the validity depends on the validity of the 1985 removal? Actually, they're both incorrect because Mr. Cajalrena is not an act felon. Well, but they don't really depend. That's the question. They have nothing to do with 1985 because when they remove him again, he comes in, he keeps coming in, they keep sending him out. When he comes in again, they remove him as a non-LPR aggravated felon. That is not predicated on needing something from 1985. That's predicated on whether or not he's an aggravated felon, correct? Right, which he is not. Okay. Well, that's what you say. But what my point is, it seems to me that the district court was off on a frolicking in 1985 because the whole question really hinges on what does the indictment say? It's based on the 2006 order. And then you just have a question of, you know, is he an aggravated felon? And, Your Honor, the PSR found that he was not. He only received a four-level enhancement. As a matter of fact, in both of those documents, both in 2003 and 2006, if you look at them, he was told both times in those documents that he was being removed as an aggravated felon and that he had no relief from removal. Those were the notices. And that kind of makes it kind of like the Arias Ordonez case that came out on Monday. But I think maybe what the district court or the magistrate judge was trying to do was say, well, these may not be any good, but this one is. And that's the way the court ---- You know, you can't just mix and match. I'm looking at what basically the indictment says. The indictment says he was removed in May 2006. And that's the order that it references. So if you go to that, does he have the possibility to go to court or to, I mean, to reopen with respect to the finding of being an aggravated felon? That is not the administrative regulation that we're looking at. That refers to when you don't receive notice of your deportation hearing. Right. And the expedited removal is done by an immigration officer, not an immigration judge. Well, what's your complaint with the 2006 order, which he's here and he's removed in 2006? Well, it would be that he was not an aggravated felon at the time then, Your Honor, and he should not have been removed. And so they shouldn't be able to use it against him now, if that's what the court is asking. Right. Okay. That would be ---- and I don't know if I should move on to the second issue. Well, I mean, that isn't that issue. Go ahead. Well, and, Your Honor, as to the second issue in this case, and I know I'm running low on time here, so I would just ask the Court to notice that in all the cases involving official restraint, I think the only one I found where it didn't happen was ---- sorry, I can't remember the name right now. I think it's Bayo Baena. In all the cases, the individuals who testified as to where the person was found was the person who actually first came into contact with them, the first law enforcement person. In one case, I think it was actually a San Diego County employee that came in contact with them. In this case, we have no one that testifies as to how he came into custody of the federal ---- excuse me, into custody. He was first taken in by the Pima County authorities because he was brought from the Pima County jail over to the immigration office. And at the immigration office, an officer interviewed him, but all he told the court when he testified was he told me he entered December 4th of 2007, and that interview took place December 9th, 2007. Did you request an instruction concerning the government's obligation to prove that he was not under official restraint? Your Honor, I moved for Rule 29 only. I did not request an instruction in this case. I moved for Rule 29 at the end of the ---- at the close of the government's case because I frankly ---- he was arrested clearly somewhere in ---- Well, it doesn't really matter why. I just was wondering whether you had requested the instruction that Carrasco, I don't know how to pronounce that correctly, talks about. Okay. Yeah. And I did not in this case. And I'll reserve the rest of my time. You may do that. Thank you. Good morning, Your Honors. May it please the Court, my name is Melissa Meister and I represent the District of Arizona. As counsel said, this appeal presents essentially two issues. One, the defendant's failure to exhaust his administrative remedies below, and two, the sufficiency of the evidence the government used to prove that the defendant entered the United States free from official restraint. The district court got it right on both counts. So this court should thus affirm both the district court's decision to deny the defendant's motion to dismiss his indictment and his Rule 29 motion for judgment acquittal. Addressing just briefly Your Honor's question about the 2006 indictment, I realize that it wasn't briefed. It was briefed below by the Assistant United States Attorney. The indictment does reference the 2006 order. My understanding is the 2006 order of deportation was expedited. He lost his legal permanent residence status back in 1985, which might be why the district court went back to 1985. The government's position, though, is that the 2006 order would be sufficient in and of itself for two reasons. One, the defendant was convicted of third-degree burglary in 1993 and was sentenced to 10 years. That would have made him removable. Additionally, he did plead only guilty in 1985 to theft, but he admitted as true the fact that he committed armed robbery. And the government, had I been counsel below, I would have used that actually in the PSR to prove that he was an aggravated felon. So this Court chooses to go that way. I believe the 2006 removal by itself is sufficient, and you don't need to go back to 1985. But assuming this Court finds it's necessary to go back to 1985, Section 1326d requires an alien exhaust any administrative remedies that may have been available to him. May have been available, Your Honors means, may have been available prior to collaterally attacking your indictment. Not may have been available in 1985. It's not that an alien's rights are somehow frozen in time at the state of original deport. The long and the short of it is if he made a motion to reopen based on the current law, the government is conceding, I take it, that it would not be barred at the threshold because, oh, well, it didn't apply then. Yes, Your Honor. The government's conceding it would apply to him. Yes, Your Honor. He can walk into court today, or he can walk across to the immigration authorities today and make a 1003 motion to reopen his case, because 1003 clearly states that if you're an alien, you're deported in absentia, because you're in State custody, and you can prove that it was through no fault of your own that you didn't appear at your deportation proceeding, you can file a motion to reopen at any time. Right. And if I understand it, his argument, at least partly, is, well, I wouldn't be in expedited proceedings and I wouldn't have this problem if I hadn't lost my LPR status in 1985. That's how I understand it. And that was an improper – that's a step that was necessary for everything else, and therefore, if that was no good, the other stuff should fall with it. That's his argument, right? That is his argument, Your Honor. I mean, he basically says he would have become a permanent resident. He would have applied – Absent if he could have taken out what happened to him in 1985. I think his argument is I would have become a permanent resident, and of course, then I wouldn't be in the situation I'm in now. Yes, Your Honor. He argued that he would have applied for 212, I believe it's H relief, which is no longer available. 212C. 212C. I'm sorry, Your Honor. And that may be true, but he had five separate opportunities when he was present in this country to contest the IJ's order. He could have filed an appeal, which he did not do. And despite the appellant's assertions in the reply brief, the court below did find that the defendant was represented by counsel, that that counsel had filed an appeal and then withdrew the appeal. That's the supplemental excerpts of record, page 67 to 68. And the supporting documents underlying are page 27 to 31. Withdrawal of appeal generally constitutes a failure to exhaust. Second opportunity, it takes the immigration authority seven years to deport the defendant. IJ's decision is 1985. He's not deported until 1992. He's in and out of jail. He has access to counsel during those seven years, never files a motion to reopen, which under defendant's argument, he's talking about the remedies that were available to him at the time. Section 3.2 and 3.8 would have allowed him to file a motion to reopen during those seven years. But he never did. Third, he has his 2003 deportation proceeding. Could have filed a motion to reopen at that time. But if you look at page 50 of the supplemental excerpts of record, the defendant waived any contest to that removal. He never says, no, wait, you know, my 1985 deportation was lacking. He says, I'm deportable. I have no contest. 2006 is opportunity number four. He never contests that. At that time, he had filed his affidavit saying that Mr. Polis did not represent him, but he still doesn't contest that removal. And fifth, as we're sitting here today, the defendant has still failed to file a motion to reopen his proceedings. He chose to collaterally attack his indictment, and that's what 1326d specifically prohibits. It's perfectly clear. You have to do something. You have to pursue some avenue, appeal or motion to reopen before you can collaterally attack your deport. Moving on to official restraint, Your Honors, the government provided sufficient evidence below in the trial for a rational juror to conclude that the defendant entered and was found in this country free from official restraint. Official restraint occurs only when an alien is in the clutches of the government from the moment he sets foot on American soil. You have to prove for him to be in official restraint. The alien has to be either under constant observation or constant attention from the moment he touches down until he's found by immigration authorities. And those are far cry from what the government presented to the jury below. The government presented evidence below that, one, the first time immigration authorities found the defendant was December 9th, 2007. He was in Pima County Jail. Two, that Immigration and Customs Enforcement reviews those who are booked into the Pima County Jail on a daily basis looking for legal aliens. Three, that the Pima County Jail is located in Tucson, Arizona, which is quite a distance from the border. And four, that the defendant admitted that he had illegally crossed into the United States on December 4th, 2007, five days prior to when he was found by immigration authorities. Those facts are sufficient. A reasonable juror could have concluded that during those five days, during some part of those five days, the defendant was at large in the United States. This court has said that if an alien is not discovered until sometime after exercising his free will within the United States, he's entered the U.S. free from official restraint. Further, the fact that he was found in a jail some 60 miles from the international border also supports the jury's conclusion. The defendant was not found at a port of entry. He wasn't found at a jail on the border. He wasn't found in a jail in a border town. He was found in a county jail 60 miles from the border. And this court has held that an alien's presence in the United States at any location other than the border is circumstantial proof that he's free from official restraint. That is convincing unless explained away. And the defendant here didn't explain anything away. He didn't provide any affirmative evidence, which he doesn't have to, but he also didn't argue it to the jury. He had an opportunity in closing argument to say, look, jury, he was, you know, under continuous observation. He didn't do that. The only thing defense counsel argued below is that the government failed to prove he was actually deported, which is an issue that's not on appeal. The evidence the government provided was sufficient, Your Honors. Thank you. Thank you, counsel. Mr. Huerta, you have some rebuttal time remaining if you'd like to use it. Just briefly as to the first issue here. Mr. Canedo-Reyna was not convicted of a robbery at any time. He was a robbery charge. He was dismissed. That was way back in 1985. That can't be anything because there's no conviction to speak of to treat that as an aggravated felony. And again, he's still not an aggravated felon. The pre-sentence report found that he wasn't an aggravated felon. There was no objection to that by the government until now upon appeal. And so for that reason, the 2003 and 2006 removals are basically in contravention of Arias-Ordonez because they tell him you have no relief. And so how do you challenge those removals? You go to file a motion to reopen? Well, once he's removed from the – 1003.23 wouldn't apply to those removals because those were – they're aggravated felony removal orders. They apply to aliens without permission to be here, and an officer does it. 1003.23 relates to someone who's supposed to go before an immigration judge. Right. They don't get noticed, and they get shipped out. And so for that reason, I think it doesn't apply. As to official restraints, Your Honor, just briefly – I guess you didn't really – Yeah. My question is how – what's his – what's his avenue to challenge the fact that this is not an aggravated felony? Well, the finding by the district court through the pre-sentence report, Your Honor. They found – But that – but you can't – a finding by a district court over here doesn't just somehow tip over the removal order here. So you've got to – You've got to get from here to there somehow. So how do you do that? You probably have to file a habeas petition with a district court, I would assume, to force immigration to get rid of that. Right. So that might be something to consider, right? Maybe, yes. Okay. And, Your Honor, as to official restraints, I would like to say this about it. I found the case that I was referring to is Bayo, Bahena, and it's the only case where the person who arrested the individual was not brought to court, and that was I don't know where the person was. Now, Pima County Jail is 60 miles from the border. Pima County itself borders Mexico. I don't know who arrested him. And so for that reason, Your Honor, I thought that the government had not proven, and I still think they had not proven there – that there was no lack of official restraint. I see my time is up. Thank you. Thank you. The case just argued is submitted. We appreciate the arguments. And the case is submitted.
judges: Fernandez, Graber, McKeown